IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

GERRY D. HARRIS                                                                    PLAINTIFF

V.                                            3:05CV226JMM

NUCOR CORPORATION                                                        DEFENDANT

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR NON-JURY TRIAL**

Pending is Defendant's Motion for Summary Judgment and Plaintiff's Motion for Non-Jury Trial. For the reasons set forth below, Defendant's Motion is GRANTED in part and DENIED in part. Plaintiff's Motion is DENIED.

I. Facts

Plaintiff, an African American, was hired by Nucor in May 1992 as a Port Crane Operator. In 1994, Plaintiff was promoted by Steve Pienaar to the position of Locomotive Operator in the Shipping Department. In May 2004, Bill Glaser replaced Steve Pienaar as the Shipping Department Manager at Nucor. Plaintiff's supervisor was Joe Stark from 1999 to 2005.

In 2003, a white Nucor employee named David Talley used a racial slur over his personal radio while communicating with a contractor at work. The incident was investigated by Nucor. Several employees were interviewed about the incident including Plaintiff. Plaintiff and other employees confirmed that they had heard Mr. Talley's statement. Talley was terminated the next day.

In the Shipping Department at Nucor, there are four separate crews: Crew A, B, C, and D. Each crew has 3 Locomotive Operators. Plaintiff worked on the A crew. However,

Locomotive Operators from each crew fill in for one another during vacations, holidays, and other absences. During a six-month period from May 2004 until January 2005, one of the Locomotive Operators from Plaintiff's crew was on leave following an injury. During this time, Locomotive Operators from other crews worked with Plaintiff on a rotating basis.

In September 2004, Plaintiff and Tom Dazey, a white Locomotive Operator on Plaintiff's crew, were involved in a locomotive accident. Following the accident, Bill Glaser conducted an investigation and determined that the accident was primarily Tom Dazey's fault. As a result, Mr. Dazey was suspended for three days. Plaintiff was not suspended as a result of the accident.

Shortly after the accident, Scott Tarpley was transferred to the Shipping Department as a Shipping Department Supervisor. Mr. Tarpley was transferred to Shipping to assist Mr. Glaser in developing supervisors within the Department. Following the September 2004 locomotive accident, Mr. Glaser and Mr. Tarpley initiated a peer review of both Plaintiff and Mr. Dazey. The peer review evaluation form is a standardized form which requires employees to score fellow employees using a number scale. The form also includes space for employees to provide specific comments about the reviewed employee's work habits. Prior to being transferred to the Shipping Department, Mr. Tarpley had used the peer reviews for evaluation and developmental purposes in the Cold Mill at Nucor. Developmental peer reviews are typically initiated by supervisors and managers after an employee either does very poorly on an annual peer review or has other disciplinary problems that a supervisor identifies. After Mr. Dazey and Plaintiff were peer reviewed in October 2004, Mr. Tarpley averaged the scores. Tom Dazey's average score was above 7.0 and, therefore, acceptable. Plaintiff's average score was below 7.0.

Plaintiff was subsequently subjected to a series of developmental peer reviews. If an

employee who is subjected to a developmental peer review is unable to achieve acceptable scores of 7.0 or higher during the 90-day period in which the reviews are performed, the employee can be subject to adverse employment action. Managers, however, retain discretion to disregard the peer review scores. Before the developmental peer reviews began, Mr. Tarpley advised Plaintiff that he would be terminated if he did not make a 7.0 average by the end of the 90-day developmental review period.

Plaintiff's first developmental peer review was completed in November 2004. His average score was 6.54. (Def. Ex. F-6). Nucor managers including the Nucor General Manager Sam Commella met with Plaintiff to discuss the peer review results. Plaintiff's second developmental peer review was completed in December 2004. His average score was 6.36. (Def. Ex. F-7). When Nucor managers met with Plaintiff to discuss the results of his 60-day review, he was informed of the score and suspended for three days for scoring below the acceptable range. *Id.* During meetings with Plaintiff, Nucor managers also "pleaded with" Plaintiff to do what he could to improve his relationships with coworkers and their perceptions of his work. Plaintiff never approached any of his fellow Locomotive Operators during the developmental peer review period to discuss how he could improve their perceptions of his work performance. Plaintiff's third developmental review was completed in January 2005. Plaintiff's average score was 6.51. (Def. Ex. F-8). Although Plaintiff's supervisor, Mr. Stark, had given Plaintiff a 90 out of 100 on his annual reviews through 2004, Plaintiff was demoted from his position as Locomotive Operator to Coil Prepper as a result of his unacceptable scores on the peer reviews.

Plaintiff filed Charges of Discrimination with the EEOC on October 26, 2004 and

January 5, 2005 alleging discrimination by Nucor on the basis of his race and in retaliation for participation in a protected activity. On September 23, 2005, Plaintiff filed suit in this Court alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Arkansas Civil Rights Act ("ACRA"). In his Complaint, Plaintiff contends that he experienced racial harassment from some white employees from the beginning of his employment with Nucor. This harassment included having water poured in his boots, having his boot strings cut, and having water poured on his uniforms at work. Plaintiff claims he was retaliated against because of his participation in the David Talley investigation. He contends that a series of sham peer reviews, conducted by Bill Glaser and Scott Tarpley, were instituted as a pretext to demote Plaintiff from his position as a Locomotive Operator in 2005. Plaintiff claims Glaser hand-picked eleven white employees to review Plaintiff's work knowing that the eleven employees would score Plaintiff unfairly because of his race. Further, Plaintiff claims he was denied promotions at Nucor because of his race.

Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be

invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

Discussion of the Law

    I.    <u>Harassment</u>

Plaintiff complains that he has been the victim of harassment since he began his employment with Defendant in 1992. As stated, the incidents Plaintiff complains of include having water poured in his boots, having his boot strings cut, having water poured on his uniforms at work and finding confederate flags in locomotives.

In order to prove his racial harassment claim, Plaintiff must present evidence showing: 1) that he belonged to a protected group; 2) that he was subjected to unwelcome race-based

5

harassment; 3) the existence of a causal nexus between the harassment and his protected group status; and 4) the harassment affected a term, condition, or privilege of employment. *Carpenter v. Con-Way Central Express, Inc.*, 481 F.3d 611, 618 (8th Cir. 2007). "A hostile work environment 'is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment' as viewed objectively by a reasonable person." *Id.* (citing *Tademe v. Saint Cloud State Univ.*, 328 F.3d 982, 991 (8th Cir.2003)). "To be actionable, the conduct complained of must be extreme in nature and not merely rude or unpleasant." *Nitsche v. CEO of Osage Valley Elec. Coop.*, 446 F.3d 841, 846 (8th Cir.2006). "Allegations of a few isolated or sporadic incidents will not suffice; rather, the plaintiff must demonstrate the alleged harassment was 'so intimidating, offensive, or hostile that it poisoned the work environment.' " *Id.* (quoting *Tuggle v. Mangan*, 348 F.3d 714, 720 (8th Cir.2003)).

  The incidents which Plaintiff complains of are not "sufficiently severe or pervasive" to create a cause of action for hostile work environment under Title VII. *Singletary v. Mo. Department of Corrections*, 423 F.3d 886, 892-93 (finding job environs where the plaintiff had second-hand knowledge his co-workers and some managers referred to him as a "nigger" and where his vehicle had been vandalized on several occasions not objectively severe and pervasive); *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 759 (8th Cir.2004)(six instances of racially derogatory language from managers and coworkers over the course of a year and a half, together with burning cross graffiti, did not render the workplace objectively hostile.) There is also no evidence in the record that these specific incidents were based upon Plaintiff's race. The alleged Confederate flag sticker found in a locomotive was investigated by Nucor and

promptly removed. (Pl. Dep., p. 331). The remaining flag sticker allegations concerned red, not Confederate, flags which were Burlington Northern flags. (Pl. Dep., p. 327). Accordingly, Plaintiff's claim of harassment hostile work environment is dismissed.

    II.    <u>Retaliation</u>

To make a prima facie case of retaliation against the Defendant, Plaintiff must show that: (1) he engaged in protected conduct by either opposing an act of discrimination made unlawful by Title VII or participating in an investigation under Title VII; (2) he suffered an adverse employment action; and (3) the adverse action was causally linked to the protected conduct. *Eliserio v. United Steelworkers of America Local 310*, 398 F.3d 1071, 1078-79 (8th Cir. 2005).

Plaintiff feels his *co-workers* gave him low peer review scores in retaliation for his participation in an investigation of David Talley in 2003. As the Defendant points out, Plaintiff has admitted that neither his manager or supervisor retaliated against him. (Pl. Dep., p. 190). Employees are not "employers" for purposes of liability under Title VII. *Lenhardt v. Basic Institute of Technology, Inc.*, 55 F.3d 377 (8th Cir. 1995). Therefore, Plaintiff's claim that other Nucor employees retaliated against him for his protected speech does not constitute an actionable claim of retaliation under Title VII. Further, there is no temporal proximity between Plaintiff's protected conduct and his demotion. *See Shanklin v. Fitzgerald,* 397 F.3d 596, 604 (8th Cir. 2005). Therefore, Plaintiff's claim of retaliation is dismissed.

    III.    <u>Failure to Promote</u>

The only evidence Plaintiff has provided regarding his failure to promote claim is that he has been denied five supervisor positions at Nucor, the most recent denial occurring six years ago. (Pl. Dep., p. 341). This is well beyond the 180 day filing requirement of 42 U.S.C. §

2000e-5(e)(1). Moreover, Plaintiff admits that he was never denied a supervisor position because of his race. (Pl. Dep., p. 224, ln. 5). Therefore, Plaintiff's claim that he suffered discrimination based upon his race when Nucor failed to promote him is dismissed.

    IV.    <u>Demotion</u>

Plaintiff contends that he was demoted from his position as a Locomotive Operator to a position as a Coil Prepper because of his race. Specifically, Plaintiff claims that his manager, Bill Glaser, hand-picked eleven white Nucor employees to conduct peer reviews of Plaintiff knowing that these employees would score Plaintiff harshly because of his race. Mr. Glaser and Mr. Tarpley used these below-average peer review scores as a pretext to demote Plaintiff from his position on the locomotive. Plaintiff claims that other white Locomotive Operators were criticized for various performance issues but were not subjected to developmental peer reviews and demoted as was Plaintiff.

In order to make a prima facie case of race discrimination, Plaintiff must show that 1) he is a member of a protected class; 2) he was meeting his employer's legitimate job expectations at the time of the adverse action; 3) he suffered an adverse employment action; and 4) similarly situated employees outside the protected class were treated more favorably. *Taylor v. Southwestern Bell Tel. Co.*, 251 F.3d 735, 740 (8th Cir. 2001). There is no question that Plaintiff is a member of a protected class and that he suffered an adverse employment action. The issues are whether Plaintiff was meeting the Defendant's job expectations at the time of his demotion and whether other white Locomotive Operators in similar situations were treated more favorably.

The Court finds that the Plaintiff has presented a genuine issue of fact as to each of these two factors. Plaintiff has presented evidence that he was performing his job in the same manner

as he had when he received above-average evaluation scores from Joe Stark. Plaintiff has also provided favorable comments regarding his performance and attitude during the relevant time period from several co-workers. While this evidence may not be highly relevant in all employment discrimination cases, the Court finds the evidence helpful here because the Defendant relies so heavily on peer review in managing their staff. Further, there is a question of fact as to the Defendant's treatment of similarly situated white employees. Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's demotion claim is denied.

V.   Jury Issue

Plaintiff asks the Court to conduct a non-jury trial of this matter because he claims the jury pool has not fairly represented the diversity of the population, particularly African Americans. The Court finds this argument to be without merit. As Judge Wilson found in *Bell v. American Greetings Corp.*, No. 3:04CV00303WRW (E.D.Ark. filed Aug. 31, 2004), "[t]he United States District Court for the Eastern District of Arkansas has adopted a plan for the random selection of petit jurors from voter registration lists of all counties in the respective division. . . . The use of voter registration lists to select jury pools, has consistently been approved by this Circuit." *Bell v. American Greetings Corp.*, No. 3:04CV00303WRW, slip op. at 2. The Eighth Circuit has further instructed on the issue. "The mere fact that one identifiable group of individuals votes in a lower proportion than the rest of the population does not make a jury selection system illegal or unconstitutional." *Floyd v. Garrison*, 966 F.2d 947, 949 (8th Cir. 1993)(quoting *U.S. v. Clifford,* 640 F.2d 150, 156 (8th Cir. 1981)). "Absent proof that obstacles are placed in the path of blacks attempting to register to vote, voter registration lists may be used as the sole source for selecting jury pools." *Roberson v. Hayti Police Dept.*, 241 F.3d 992, 997

(8th Cir. 2001). Plaintiff has presented no proof of obstacles placed in the path of African Americans attempting to register to vote in this district. Accordingly, Plaintiff's Motion for Non-Jury Trial is denied.

## Conclusion

For the reasons set forth above, Defendant's Motion for Summary Judgment (Docket # 31) is GRANTED as to Plaintiff's Title VII and ACRA claims of retaliation, failure to promote, and hostile work environment and DENIED as to Plaintiff's Title VII and ACRA claim of discriminatory demotion. Plaintiff's Motion for Non-Jury Trial (Docket # 50) is DENIED.

IT IS SO ORDERED this 23rd day of May 2007.

*/s/ James M. Moody*
James M. Moody
United States District Judge